# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| JOSE ANDRADE, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HAMMOND, et al., <br><br> Defendants. | CAUSE NO.: 2:15-CV-134-TLS |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment [ECF No. 35], filed on February 23, 2017. In pertinent part, the Defendants argue that (1) the *Rooker-Feldman* doctrine has divested this Court of jurisdiction and (2) the Plaintiff's allegations are barred by the doctrine of res judicata. The Court agrees with the latter argument. As such, for the reasons stated below, the Defendants' Motion is granted.

## PROCEDURAL HISTORY AND MATERIAL FACTS

The Plaintiff is the owner of a rental property in Hammond, Indiana. *See* Am. Compl. ¶ 6, ECF No. 17. In the Spring of 2013, the Defendants, which include the City of Hammond and various city employees, began investigating the Plaintiff's rental property for alleged safety violations. *See id.* ¶ 6. On March 13, 2015, the Plaintiff filed a State Court Complaint [ECF No. 2] which was later removed to this Court. *See* Notice of Removal, ECF No. 1. On September 4, 2015, the Plaintiff filed an Amended Complaint [ECF No. 17] in which he asserts that the Defendants "engage[d] in a patterned course of action starting March 15, 2013 in a calculated effort to deny Plaintiff the full use and benefit" of his rental property. Am. Compl. ¶ 4. For example, the Plaintiff alleges that the Defendants (1) improperly labeled his rental property as uninhabitable; (2) attempted to enforce building codes which they had no authority to enforce;

(3) threatened him with fines; (4) required unnecessary and inappropriate modifications to his property; (5) unlawfully enforced zoning ordinances and other regulations; (6) denied him his valid liberty interest in his property; (7) denied his tenants the right to federal housing choice vouchers; (8) maliciously prosecuted him; and (9) conducted administrative hearings without adequate notice or the opportunity to confront witnesses. *See id.* ¶¶ 4–34. Based upon this, the Plaintiff alleges that the Defendants are "liable to the Plaintiff for a violation of Plaintiff's rights and entitlements and deprivation of same without due process and for which Defendants and each of them are liable to Plaintiff under state remedies as well as pursuant to 42 U.S.C. 1983." *Id.* ¶ 35.

While his federal case remained pending, the state administrative proceedings continued against the Plaintiff's rental property.[1] On January 12, 2017, the Hammond Board of Public Works and Safety (the board) conducted an evidentiary hearing regarding whether the Plaintiff's rental property was in an unsafe condition. *See* Ex. C, Tr. of Board Hr'g, p. 4, ECF No. 61-3. Kurtis Koch, the building commissioner of the City of Hammond, and Kelly Kearney, a former code enforcement commissioner for the City of Hammond, testified at length about the alleged unsafe conditions at the Plaintiff's rental property. *See id.* at 14–132.

On March 9, 2017, the board issued an order in which it found that the Plaintiff's property did "not have fire stopping and thus allows heat transfer, fire, and smoke to travel unimpeded through chases and into different floors of the structure." Ex. A, Findings of Fact and Decision, p. 3, ECF No. 61-1. The board also found that the building's "chimney chase was surrounded by open space from the cellar/basement through each floor to the roof deck, thus providing no fire blocking to the rooms upstairs." *Id.* The board explained that "[i]f a fire began

---

[1] The procedural history of the administrative proceedings is included only to the extent necessary for the resolution of this case.

in the cellar, it could quickly spread to the upstairs rooms by means of this opening, entrapping occupants and exposing them to the hazards of smoke and flame." *Id.* The board also found that the Plaintiff's property contained support beams made of flammable material. *Id.* The board found that there was "no adequate fire separation between" the various apartments located on the property. *Id.* Likewise, the board found that "[t]he rear stairs, which in the event of a fire would be the sole means of egress for the upstairs and main floor apartments, are unsafe and inadequate in that the supports are not properly braced and the stairs are of inadequate width." *Id.* at 4. The board also found that the basement apartment was unsafe because there were no windows in the bedroom and the short height of the ceiling would contribute to smoke accumulation. *Id.* Further, the board found that there were "no interconnected smoke detectors and only a few of the battery-operated smoke detectors were operable." *Id.* The board also found that the property "was not erected as a multi-unit structure in 1927 and was never legally converted to a multi-unit apartment building thereafter." *Id.*

Based upon this, the board found that the Plaintiff's rental property "contains impaired structural conditions and fire hazards that are dangerous to its occupants, rendering the premises unsafe and in violation of Indiana's Unsafe Building Law. Ind. Code § 36-7-9-4." *Id.* at 9. The board also found that the Plaintiff did not "make repairs on the property to render it safe for occupants. The owner continued to rent the five units and did not convert the property to a safe building despite notice and opportunity to do so." *Id.* The board concluded that "the five unsafe and illegally constructed units cannot lawfully be occupied in the building's present condition." *Id.* at 10. As such, the board affirmed that the property was unsafe and ordered that the property be restored to a single-family dwelling. *Id.*

The Plaintiff appealed that decision to the Superior Court of Lake County, Indiana (state trial court). *See* Ex. D, Tr. of Judicial Review Hr'g, p. 3, ECF No. 61-4. On February 8, 2018, the state trial court conducted a lengthy evidentiary hearing. *Id.* Following the presentation of evidence, the Defendants argued that the Plaintiff failed to demonstrate that the board's decision was unreasonable. *Id.* at 108. The Defendants further argued that the Plaintiff's arguments were irrelevant to the underlying issue of whether the property was an unsafe building. *Id.* at 104. In response, the Plaintiff essentially argued that (1) the board acted beyond its legal authority, (2) the property was originally built and zoned as a multi-family unit, and (3) the Defendants failed to comply with a subpoena. *See id.* at 111–16.

On March 28, 2018, the state trial court found that the board's findings of fact were "well-supported by the record." Ex. E, Order of Lake Superior Court, p. 2, ECF No. 61-5. To that point, the court found as follows:

> 4. The Safety Board's Findings of Fact[,] specifically, unsafe conditions of inadequate fire stopping, flammable support beams, inadequate fire separation, improperly braced stairs of inadequate width, lack of any windows in the basement apartment bedroom and low ceilings that would contribute to smoke accumulation and render an inhabitant potentially trapped in his or her bedroom in the case of a fire with no means of escape, and smoke detectors that were either inoperative or were not interconnected, described the unsafe conditions of [the Plaintiff's rental property].
>
> 5. The Plaintiff did not present evidence at the Safety Board hearing or at this Court's judicial review hearing that the aforementioned unsafe conditions were either not present or had been properly remedied.

*Id.* (internal citations omitted).

The state trial court concluded that the Plaintiff's arguments regarding (1) the Defendants' failure to comply with a subpoena and (2) whether the property was originally a multi-family unit were "not determinative of whether the building is 'unsafe' as defined by Ind. Code § 36-7-9-4(a) and as found by the Safety Board." *Id.* at 5. By implication, the court also

4

concluded that the board acted with statutory authority. *See id.* at 4, 6. Accordingly, the court affirmed the board's order. *Id.* at 5–6.

The Plaintiff then appealed to the Indiana Court of Appeals and argued that (1) the board's actions violated the Takings Clause, (2) one of the board members acted improperly or acted from bias, (3) the board exceeded its statutory authority when it ordered him to restore the property to a single-family home, (4) the board's finding that the property was originally built as a single family residence was not supported by substantial evidence, and (5) the Defendants' failure to comply with a subpoena required that the board's decision be reversed. *See Andrade v. City of Hammond*, 114 N.E.3d 507, 510, 514 n. 1, 516 n. 5 (Ind. Ct. App. 2018). The Indiana Court of Appeals concluded that the Plaintiff's "contentions that the Board's actions were in violation of the Takings Clause and were an abuse of discretion are undeveloped and unsupported by cogent authority . . . . Those arguments are waived for our review." *Id.* at 514 n. 1. The court held that the Plaintiff's claim "of impropriety or bias on the part of one of the Board members . . . was not raised at the trial court level and, therefore, is waived for our review." *Id.* at 516 n. 5. The court also rejected the Plaintiff's argument that the board did not have the lawful authority to order him to restore the property to a single-family dwelling. *Id.* at 515–16. The court affirmed the board's finding that the property was originally a single-family dwelling. *Id.* at 516. Finally, the court rejected the Plaintiff's argument regarding the Defendants' failure to comply with the subpoena. *Id.* at 516–17.

Thus, the Indiana Court of Appeals affirmed the trial court's order. *See id.* at 518. On March 7, 2019, the Indiana Supreme Court declined the Plaintiff's petition to transfer. *Andrade v. City of Hammond*, 124 N.E.3d 39 (Ind. 2019). The Plaintiff then appealed to the Supreme

Court of the United States, but his petition for certiorari was denied on October 7, 2019. *Andrade v. City of Hammond, Ind.*, 140 S. Ct. 127 (2019).

As noted earlier, the Defendants filed the instant Motion for Summary Judgment [ECF No. 35] on February 23, 2017. In support of this Motion, the Defendants argued that the Plaintiff had not sustained a deprivation of a civil right, had not been deprived of the opportunity to rent to low income residents, had not been subjected to a malicious prosecution, and failed to raise a dispute of material fact which would preclude the entry of summary judgment. *See* Br. In Supp. of Summ. J., ECF No. 36. The Plaintiff filed a Response [ECF No. 43] on April 6, 2017, and the Defendants filed a Reply [ECF No. 45] on April 21, 2017. However, as indicated above, these filings occurred while the administrative proceedings were being adjudicated within the Indiana judiciary. On June 19, 2019, following the Indiana Supreme Court's denial of transfer, the Defendants filed a Supplemental Brief [ECF No. 56] in support of their Motion for Summary Judgment. In relevant part, the Defendants now argue that (1) the *Rooker-Feldman* doctrine has divested this Court of jurisdiction and (2) the Plaintiff's claims are now barred by the doctrine of res judicata.[2] This case is now fully briefed and ripe for ruling.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only

---

[2] The Court has reviewed all filings and arguments raised by the parties. However, for the purposes of judicial efficiency, the Court will only address the arguments which are necessary for the resolution of this case.

speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Furthermore, "[t]he simple assertion that a factual dispute exists cannot defeat a motion for summary judgment. If the doctrine of *res judicata* applies, then granting the motion for summary judgment is appropriate." *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992).

## ANALYSIS

In pertinent part, the Defendants argue that (1) the *Rooker-Feldman* doctrine has divested this Court of jurisdiction and (2) the Plaintiff's allegations are barred by the doctrine of res judicata. The Court agrees with the latter argument. As such, the Defendants' Motion for Summary Judgment is granted.

**A.      The *Rooker-Feldman* Doctrine**

The Defendants argue that the *Rooker-Feldman* doctrine has divested this Court of jurisdiction. The Court disagrees.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (discussing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it."

7

*Sykes v. Cook Cty. Circuit Court Probate Div.*, 837 F.3d 736, 742 (7th Cir. 2016) (citing *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012)). However, in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005), the United States Supreme Court emphasized that *Rooker-Feldman* does not apply when there is parallel state and federal litigation:

> When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.
>
> Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give. Preclusion, of course, is not a jurisdictional matter.

*Id.* at 292–93 (internal quotation marks and citations omitted); *see also Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017).

Regarding the facts underlying the instant lawsuit, the dispute over the Plaintiff's rental property began sometime in the spring of 2013. *See* Am. Compl. ¶¶ 6–7. Namely, following various inspections, the Defendants began civil proceedings to shut down the Plaintiff's rental property. *See id*. While the civil proceedings were unfolding, the Plaintiff filed an Amended Complaint [ECF No. 17] in this Court which alleged various constitutional violations against the Defendants. On March 9, 2017, the board ordered that the Plaintiff return his rental property to a single-family residence. On March 28, 2018, the state trial court affirmed the board's order. On November 15, 2018, the Indiana Court of Appeals affirmed the state trial court, and, on March 7,

2019, the Indiana Supreme Court declined the Plaintiff's petition to transfer. On October 7, 2019, the Plaintiff's petition for certiorari to the United States Supreme Court was denied.

As indicated above, the Plaintiff's federal case was parallel with his state court litigation. "When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Exxon Mobil*, 544 U.S. at 292. As such, due to the parallel nature of the state and federal proceedings, the *Rooker-Feldman* doctrine is not implicated in this case. *Id.*; *see also Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) ("*Rooker–Feldman* does not bar the claims of federal-court plaintiffs who, like Parker, file a federal suit when a state-court appeal is pending."). Rather, disposition of this case is governed by preclusion law. *Exxon Mobil*, 544 U.S. at 293.

**B.    Res Judicata**

Next, the Defendants argue that the Plaintiff's claims are barred by the doctrine of res judicata. The Court agrees.

**1.    *The Doctrine of Res Judicata***

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court." *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). More specifically, "[t]he judgment of a state court sitting in review of an administrative agency is entitled to full faith and credit in federal court." *Abner v. Ill. Dep't of Transp.*, 674 F.3d 716, 719 (7th Cir. 2012) (citing 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982)). "The doctrine of res judicata is fully applicable to civil rights claims brought pursuant to § 1983. The res judicata effect of a state-court judgment upon a subsequent § 1983 action is a matter of state law." *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir. 1996) (citations omitted); *see Rose v. Bd. of Election Comm'r*

*for the City of Chi.*, 815 F.3d 372, 374 (7th Cir. 2016) (applying Illinois res judicata principles to a claim brought pursuant to 42 U.S.C. § 1983).

"Res judicata is a legal doctrine intended 'to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies.'" *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014) (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)). "There are two separate branches of *res judicata*: claim preclusion and issue preclusion." *Hood v. G.D.H. by Elliot*, 599 N.E.2d 237, 239 (Ind. Ct. App. 1992). "The first of these branches, claim preclusion, applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013). "When claim preclusion applies, all matters that were *or might have been* litigated are deemed conclusively decided by the judgment in the prior action." *Id.* (emphasis added). For claim preclusion to apply, the following requirements must be met:

> (1) the former judgment must have been rendered by a court of competent jurisdiction;
> (2) the former judgment must have been rendered on the merits;
> (3) the matter now in issue was, or could have been, determined in the prior action; and
> (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id.* (spacing modified); *see also In re Eq.W.*, 124 N.E.3d 1201, 1209 (Ind. 2019). The Plaintiff only disputes the second and third factors of claim preclusion, so the Court will limit its analysis to those issues.

## 2.     *The Former Judgment was Rendered on the Merits*

First, the Court concludes that the former judgment was rendered on the merits. "A decision with respect to the rights and liabilities of the parties is on the merits where it is based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on

which the right of recovery depends." *Creech v. Town of Walkerton*, 472 N.E.2d 226, 228 (Ind. Ct. App. 1984) (citation omitted). In the state administrative proceedings, after conducting a lengthy evidentiary hearing, the board found that the Plaintiff's property was an unsafe building and ordered that it be returned to a single-family residence. The state trial court, after conducting an evidentiary hearing, affirmed the board's order. The Indiana Court of Appeals affirmed the trial court and concluded, in pertinent part, that (1) the board had the lawful authority to order the Plaintiff to restore the property to a single-family residence and (2) the board's order was supported by sufficient evidence. Finally, both the Indiana Supreme Court and the United States Supreme Court declined to review that case. As such, the Court finds that the former judgment was rendered on the merits. *See Town of Newburg v. Stephenson*, 316 N.E.2d 855, 857 (Ind. Ct. App. 1974) (holding that an order which vacated a decision from the board of zoning appeals and remanded for further proceedings was not a final judgment on the merits). Moreover, the Plaintiff's failure to properly preserve arguments for appeal does not mean that the former judgment was not rendered on the merits. *See Creech*, 472 N.E.2d at 228.

3.  ***The Plaintiff's Pending Claims Could Have Been Determined in the Prior Action***

Second, the Court concludes that the matters now in issue could have been determined in the prior action. Indiana courts apply the "identical evidence test" to determine whether an issue could have been determined in a prior action. *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1002 (Ind. Ct. App. 2015). This test is satisfied when "identical evidence will support the issues involved in both actions." *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1047 (Ind. Ct. App. 2011). However, the identical evidence test is applied practically rather than literally. *Id.*; *see Freels v. Koches*, 94 N.E.3d 339, 343–44 (Ind. Ct. App. 2018). Under this practical approach, courts consider whether a party's claims could have been decided under the same

11

general evidence which was introduced or could have been introduced in an earlier proceeding. *Hilliard*, 957 N.E.2d at 1047 ("Even though individual pieces of evidence may differ between the two sets of claims . . . , the same general evidence would be used to adjudicate all of Hilliard's claims . . . ."); *Koches*, 94 N.E.3d at 344 ("Nothing about the facts alleged in [the] subsequent action . . . demonstrates that the 'new' information relied upon was unavailable to her at the time she filed her action in the small claims court. Rather, the underlying facts demonstrate that both litigations are 'essentially the same.'" (quoting *Becker*, 992 N.E.2d at 700)). Moreover, a party cannot avoid res judicata by failing to introduce evidence or failing to assert a claim in a prior proceeding. *Hilliard*, 957 N.E.2d at 1047.

The Unsafe Building Law (UBL) provides a statutory framework for a city, town, or county to address unsafe buildings. *See Andrade*, 114 N.E.3d at 514 (citing Ind. Code § 36-7-9 *et seq.*). As relevant here, an unsafe building is any building or structure that is in an impaired condition that makes it unsafe, a fire hazard, a hazard to the public health, or is dangerous because of a violation of a statute or ordinance concerning building condition or maintenance. *See* Ind. Code § 36-7-9-4(a)(1)–(3), (5). When a building is unsafe, a municipality may issue an order that requires, among other things, the vacating of the building, the sealing of the building, the removal of fire hazards or other public health hazards in or around the building, the repair or rehabilitation of the building, and the partial or complete demolition of the building. *See* Ind. Code § 36-7-9-5(a)(1), (2), (4)–(7).

An order issued pursuant to the UBL is appealable to the state trial court in which the building is located. Ind. Code § 36-7-9-8(a). "A person requesting judicial review . . . must file a verified complaint including the findings of fact and the action taken by the hearing authority." Ind. Code § 36-7-9-8(b). "An appeal under this section is an action de novo. The court may

affirm, modify, or reverse the action taken by the hearing authority." Ind. Code § 36-7-9-8(c). "Under a de novo review, the trial court may, to a limited extent, weigh the evidence supporting the enforcement authority's findings of fact." *Groff v. City of Butler*, 794 N.E.2d 528, 533 (Ind. Ct. App. 2003). However, "the trial court may not substitute its judgment for that of the agency below; rather, the facts should be determined only one time." *Kopinski v. Health and Hosp. Corp. of Marion Cty., Ind.*, 766 N.E.2d 454, 455 (Ind. Ct. App. 2002). Indeed, the state trial court may negate a finding of fact "only if, based upon the evidence as a whole, the finding of fact was (1) arbitrary, (2) capricious, (3) an abuse of discretion, (4) unsupported by the evidence or (5) in excess of statutory authority." *Kollar v. Civil City of South Bend*, 695 N.E.2d 616, 619 (Ind. Ct. App. 1998) (quoting *Uhlir v. Ritz*, 264 N.E.2d 312, 314 (Ind. 1970)).

However, notwithstanding the apparently limited scope of review, a party appealing an order pursuant to the UBL may raise additional issues in his complaint which the state trial court must fully consider. *Kollar*, 695 N.E.2d at 620, 623 n. 4; *see also City of Mishawaka v. Stewart*, 310 N.E.2d 65, 68 (Ind. 1974). Indeed, after losing at the administrative level, parties can raise new constitutional arguments to the state trial court. *See, e.g.*, *Kollar*, 695 N.E.2d at 623 n. 4 ("The City asserts that [the plaintiff's argument regarding due process and bias] was also waived by the Kollars' failure to properly raise it below. However, we conclude that the issue was properly raised because bias was specifically listed in the complaint."); *Util. Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 735 (Ind. 2013) ("[A] review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitutional, statutory, or legal principle." (quoting *City of Mishawaka*, 310 N.E.2d at 68–69)). Furthermore, Indiana courts have concurrent jurisdiction over constitutional

13

claims brought pursuant to 42 U.S.C. § 1983. *Haywood v. Drown*, 556 U.S. 729, 735 (2009); *Snyder v. King*, 958 N.E.2d 764, 787 (Ind. 2011).

Turning to the Amended Complaint [ECF No. 17], the Plaintiff alleges numerous reasons why his due process rights were violated. However, all of his allegations arise out of the Defendants' efforts to shut down his rental property. In essence, the Plaintiff seeks to relitigate (1) whether the board had lawful authority to order him to restore his property to a single-family residence, (2) whether his building was a fire hazard, (3) whether his building was originally a single family residence, and (4) whether the Defendants violated his right to due process when they failed to comply with his subpoena. However, these arguments were explicitly raised in state court and rejected on the merits. *See Andrade*, 114 N.E.3d at 514–18.

The Plaintiff's other allegations in the Amended Complaint include issues such as (1) whether the Defendants conspired against the Plaintiff, (2) whether his property was targeted because he rented to low income residents, and (3) whether he was subject to a malicious prosecution. However, assuming for the moment that these allegations have any merit, they could have been presented to the state trial court as a basis to reverse the board's ruling. Stated simply, *Kollar* and its progeny allow for a property owner to raise due process and other constitutional challenges when an appeal of the board's decision is taken to the state trial court. *See Kollar*, 695 N.E.2 at 623. Indeed, the Indiana Court of Appeals concluded that the Plaintiff waived his due process arguments by failing to include them in his state court complaint. *Andrade*, 114 N.E.3d at 516 n. 5, n. 6 (citing *Kollar*, 622 N.E.2d at 622). As such, the Plaintiff could have and should have raised all of his arguments within his state court litigation.

Finally, turning to the identical evidence test, the Court finds that the Plaintiff's claims could have been decided under the same general evidence which was introduced or could have

14

been introduced in his state court litigation. *See Hilliard*, 957 N.E.2d at 1047; *Koches*, 94 N.E.3d at 344. Namely, all of the Plaintiff's due process allegations in federal court arise from the Defendants' efforts to shut down his rental property. Likewise, all of the Plaintiff's arguments in state court arose from the Defendants' efforts to shut down his rental property. As such, the Court finds that identical evidence would have supported the issues involved in both the state and federal actions. *Hilliard*, 957 N.E.2d at 1047. Moreover, the Plaintiff cannot avoid res judicata by failing to introduce evidence or failing to assert a claim within the state court proceedings. *Id*. Therefore, the Plaintiff's claims in the Amended Complaint are barred by res judicata.

Moreover, regarding the issue of whether the Plaintiff could have included his federal claims within his state court complaint, the Court is particularly persuaded by the following cases. In *Charles Koen & Associates v. City of Cairo*, 909 F.2d 992, 993 (7th Cir. 1990), the plaintiff's building was partially destroyed by fire. While the removal of the building was being litigated in the Illinois judiciary, the City of Cairo requested permission from the state trial court to demolish the building. *See id.* at 993–94. The plaintiff objected, but the court granted the city's request. *Id.* The plaintiff continually litigated this issue in state court and sought a temporary restraining order to prevent the destruction of his building. *See id.* at 993–95. In pertinent part, the plaintiff also alleged that the city's proposed demolition was improper and would be a taking of property without just compensation. *Id.* While his state court claims were being litigated, the plaintiff also filed a lawsuit in federal court which requested damages for the demolition of his building. *Id.* at 996. In pertinent part, the plaintiff alleged that the defendants (1) unlawfully confiscated his property and (2) deliberately discriminated against him and other individuals on the basis of race in violation of 42 U.S.C. § 1983. *Id.* at 996. Ultimately, the state

15

trial court determined that demolition of the building was proper and that the plaintiff was not entitled to damages. *Id.* at 995–96. Afterward, the district court granted the defendants' motion for summary judgment on the basis of res judicata. *Id.* The Seventh Circuit affirmed and concluded, in pertinent part, that "[t]he city was a party to the state court suit, and there is no reason to believe that [the plaintiff] could not have amended his complaint after the demolition to assert these [§ 1983] claims against the city." *Id.* at 999. Much like the plaintiff in the *Cairo* case, the Plaintiff in this case should have amended his state court complaint to include his due process claims against the Defendants.

In *Atkins v. Hancock County Sheriff's Merit Board*, 910 F.2d 403, 404 (7th Cir. 1990), Atkins was discharged for insubordination after a hearing before the sheriff's merit board. Atkins appealed his discharge to the Indiana judiciary, but his discharge was ultimately upheld. *Id.* Atkins also pursued a federal civil rights suit in which he alleged that he was discharged on political grounds in violation of his rights under the First and Fourteenth Amendments. *Id.* The district court dismissed the suit as barred by res judicata. *Id.* On appeal, the Seventh Circuit noted as follows:

> [S]ince the review proceeding had to be filed in a court of general trial jurisdiction, as the Indiana circuit court is, Atkins could have joined with his petition to review the action of the merit board a complaint for violation of his federal civil rights, a type of complaint that can be brought in state court as well as federal court.

*Id.* The Seventh Circuit then applied the identical evidence test under Indiana law to determine whether the plaintiff was required to bring his civil rights claims before the state trial court. *Id.* In pertinent part, the court concluded as follows:

> Atkins was fired, ostensibly for insubordination. True, his petition to review the board's determination that he was insubordinate and that this was the ground for his being fired does not have the identical elements as his First Amendment claim. He could prevail in the review proceeding by showing that the administrative record did not support a finding that he had been insubordinate, even if he failed to

16

> establish the true cause of his being fired. And since the elements of the two claims thus are not identical, there is no expectation that the evidence necessary to support them must always be identical. In this case, however, it *is* identical. The evidence of Atkins's alleged insubordination, of his political activities, of the reactions of his superiors to his political activities—all this evidence is not only germane, but central, both to the review proceeding and to the civil rights claim. The overlap is complete as a practical matter, and no more is required to uphold a res judicata defense under the same-evidence rule.

*Id.* at 405 (citing *Coulson v. State*, 488 N.E.2d 1154 (Ind. Ct. App. 1986)). Much like Atkins, the Plaintiff in this case was appealing an administrative matter to the state trial court of Indiana. Because the state trial court is a court of general jurisdiction, the Plaintiff could have included his § 1983 claims within his state court complaint. *See Atkins*, 910 F.2d at 405; *Haywood*, 556 U.S. at 735; *King*, 959 N.E.2d at 787. Additionally, as was the case in *Atkins*, the evidence regarding whether the Plaintiff's property was an unsafe building was "not only germane, but central, both to the review proceeding and to [the Plaintiff's § 1983] claim[s]. The overlap is complete as a practical matter, and no more is required to uphold a res judicata defense under the same-evidence rule." *Atkins*, 910 F.2d at 405. Thus, the Plaintiff could have and should have included all of his constitutional claims within his state court complaint. As such, the Plaintiff's claims before this Court are barred by the doctrine of res judicata.

Trying to avoid this result, the Plaintiff argues that he could not have raised such issues to the state trial court due to the limited nature of the state trial court's review. The Court disagrees. As indicated above, the Plaintiff could have raised his constitutional challenges when appealing to the state trial court. *See* Ind. Code § 36-7-9-8(b) ("A person requesting judicial review . . . must file a verified complaint including the findings of fact and the action taken by the hearing authority."); *Kollar*, 695 N.E.2d at 623 n. 4 ("The City asserts that this issue was also waived by the Kollars' failure to properly raise it below. However, we conclude that the issue was properly raised because bias was specifically listed in the complaint."); *Util. Ctr., Inc.*, 985 N.E.2d at 735

(noting that judicial review includes determining whether or not the order violates any constitutional, statutory, or legal principle).

Moreover, the state trial court and the parties were aware of *Kollar* and the scope of review pursuant to Indiana Code § 36-7-9-8(b). Namely, prior to the start of the state trial court's evidentiary hearing, the following exchange occurred:

> [Plaintiff's counsel]: Finally, Your Honor, before I begin my opening statement and the presentation of evidence, I would like to move for separation of witnesses. Plaintiff intends to call Curtis Vosti, Rosa Thompson, Kurtis Koch, and Kelly Kearney.
>
> THE COURT: Okay, that motion is granted. Defense, who do you folks intend to call?
>
> [Defense counsel]: Your Honor, it's our position that the record before the Court is complete with the transcript of the hearing, and that no witnesses should be called or need to be called for the Court to conduct its judicial review.
>
> THE COURT: Your response.
>
> [Plaintiff's counsel]: My response, Your Honor, is that the case law is clear that evidence may be submitted at a judicial review hearing citing the case of *Alcantar v. City of Hammond* in which the plaintiff was permitted to supplement the record with additional evidence. I have evidence to establish our version of what happened here and I would like the opportunity to present that evidence.
>
> [Defense counsel]: . . . . The case of *Kollar v. City of South Bend*, and its progeny, make clear that it's only new issues, that would be procedural due process issues, that the Court may consider as new issues. Otherwise, the record is—and the Indiana Unsafe Building Law from which this plaintiff took its appeal to this Court makes very clear of the limited review this Court conducts and it's based upon the extant evidence presented to the Board. Otherwise, it is a trial that this Court is conducting and considering new evidence never considered by the Board, the Board could not have made a Finding, and, therefore, it would be a fundamental harmful error injected into the case.
>
> THE COURT: Let me respond.
>
> [Plaintiff's counsel]: May I reply?
>
> THE COURT: Let me say this, I'm going to allow testimony, witnesses to be called, but there is a caveat in that regard. If it's new evidence, I'm not going to hear it.
>
> [Plaintiff's counsel]: Understood, Your Honor.

> THE COURT: Now, with that caveat, I will allow you to call witnesses to testify, but new evidence. I expect an objection if it comes to that will—that objection will be sustained.
>
> [Plaintiff's counsel]: Absolutely, Your Honor.

Ex. D, Tr. of Judicial Review Hr'g, pp. 4–6, ECF No. 61-4. As this exchange indicates, the state trial court was aware of *Kollar* and its progeny. Apparently, however, the Plaintiff did not include any procedural due process arguments within his state court complaint. Indeed, as noted above, the Indiana Court of Appeals concluded that the Plaintiff had waived several arguments by failing to include them in his state court complaint. *Andrade*, 114 N.E.3d at 516 n. 5, n. 6 (citing *Kollar*, 622 N.E.2d at 622). As such, the Court rejects the Plaintiff's argument that he could not have raised his constitutional arguments to the state trial court.

The Plaintiff also argues that he could not have raised his federal claims to the state trial court because he did not "uncover" the Defendants' conspiracy until the state trial court conducted its evidentiary hearing on February 8, 2018. This argument is without merit. On September 4, 2015, the Plaintiff filed his Amended Complaint [ECF No. 17] in which he alleges that "[t]he Defendant(s) through actions and efforts of various employees . . . did engage in a patterned course of action starting March 15, 2013 in a calculated effort to deny Plaintiff the full use and benefit of his property . . . and those actions continue to this day." Am. Compl. ¶ 4. Furthermore, during his closing arguments to the state trial court, the Plaintiff argued at length about the Defendants alleged wrongdoings and their failure to comply with the subpoena. Ex. D, Tr. of Judicial Review Hr'g, pp. 115–16, ECF No. 61-4. As such, the Plaintiff was well aware of the alleged conspiracy to deny him the right to use his rental property. At the very least, based upon the allegations he made within his Amended Complaint and the procedural history of the state administrative proceedings, the Plaintiff should have been on notice of any alleged

conspiracy and included this claim within his state court complaint. Accordingly, the Court rejects the Plaintiff's argument that he could not have included his federal claims within his state court complaint.

## CONCLUSION

For the reasons stated above, the Court concludes that the Plaintiff's allegations are barred by the doctrine of res judicata. Therefore, the Defendants' Motion for Summary Judgment [ECF No. 35] is GRANTED. The Clerk of Court is directed to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on March 6, 2020.

                                                 s/ Theresa L. Springmann
                                                 CHIEF JUDGE THERESA L. SPRINGMANN
                                                 UNITED STATES DISTRICT COURT